UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

WARN INDUSTRIES, INC.,

Plaintiff,

v.

AGENCY 6 INC.,

Defendant.

No. 2:22-cv-01358 WBS JDP

MEMORANDUM AND ORDER RE: DEFENDANT'S MOTION TO DISMISS

----oo0oo----

Plaintiff Warn Industries, Inc. brought this patent infringement action against Agency 6 Inc. alleging induced infringement, contributory infringement, and willful infringement. (Compl. (Docket No. 1).) Defendant now moves to dismiss plaintiff's complaint in its entirety.[1] (Mot. (Docket No. 12).)

I. BACKGROUND

[1] Defendant has requested that the United States Patent and Trade Office reconsider the grant of the '963 Patent under 35 U.S.C § 102 and 35 U.S.C § 103. (See Mot. at 4, fn. 4.) A review under § 102 and § 103 does not impact this motion.

Plaintiff is a Delaware corporation with its principal place of business in Clackamas, Oregon. (Compl. ¶ 2.) Defendant Agency 6 is a California corporation with its principal place of business in Roseville, California. (Id.) Plaintiff manufactures, markets, and sells winches, among other related rigging accessories and shackles.[2] (Id. ¶¶ 3, 32-36.)

On November 9, 2021, the United States Patent and Trademark Office ("USPTO") issued to plaintiff Patent No. 11,167,963 (the "'963 Patent") entitled "Fairlead Systems for Winch Rope Interfaces and Recovery Rigging Mountable to a Winch and Fairlead and/or Vehicle Bumper." (Id. ¶ 40.) The '963 Patent "generally describes a shackle mount that is connectable to a standard recovery winch cable. The shackle mount includes a shackle attachment tab that prevents lateral movement of the shackle mount along the shackle pin." (Id. ¶ 59.) The '963 Patent thus "protects the fairlead[3] of a winch system from damage due to impact from the cable terminal." (Compl., Ex. A (the "'963 Patent") at 19 (Docket No. 1-2).)[4]

[2] A "winch" refers to a type of mechanical device that is used to pull in or let out a rope or cable wound around a spool or drum. A "shackle" refers to a U-shaped piece of metal secured with a pin, bolt, or hinged loop. A "winch shackle" is a device wherein a "winch" and a "shackle" are manufactured as one unit. As plaintiff explains: "Winch shackles are attachment points for the end of winch cables, and provide a safer, stronger, and more secure attachment point than traditional hooks often found at the end of winch cables." (Compl. ¶ 37.)

[3] A "fairlead" is a device to guide a line, rope, or cable around an object, such as a spool or drum.

[4] For simplicity, the court will cite to the ECF page numbers when referencing Exhibit A, a copy of the '963 Patent.

(Id. at 5.)

Claim 1 of the '963 Patent provides:

> A rigging interface, comprising:
> a first surface arranged on an inner side of the rigging interface, the inner side including two side portions spaced apart from one another in vertical direction, wherein the two side portions of the inner side are configured to nest against a front of a winch fairlead;
> an extension configured to be coupled to a cable such that the cable is couplable around the extension, the cable extending outward from the winch fairlead and wound around a drum of the winch, wherein the cable is configured to extend between the two side portions of the inner side to couple with the extension.[5]

(Id. at 19.)

Plaintiff alleges that defendant's Billet[6] Winch Shackle (the "Accused Product"), satisfies every description of Claim 1. (See Compl., Ex. D ("Claim Chart") (Docket No. 1-5).) In the Claim Chart, plaintiff provides photographs of the Accused Product with added labels showing how the Accused Product

[5] Both parties direct their arguments to Claim 1 because it is the only independent claim of the '963 Patent. Therefore, this order will also focus on Claim 1.

[6] A billet is a solid length of metal with a square or circle cross-section.

satisfies every description.[7]

Two Side Portions configured to nest against a front of a winch fairlead

Winch Fairlead

(Id. at 2.)

On October 22, 2020, plaintiff sent defendant a cease and desist letter regarding the Accused Product, claiming infringement of United States Patent No. 9,388,025 (the "'025 Patent") and United States Patent Publication No. 2019/0127190 (the "'190 Publication), which issued as the '963 Patent the following year.[8] (Compl. ¶ 51.) The letter states: "[T]he '190 Publication is directed toward similar rigging shackles . . . . While the claims of the '190 Publication have yet to be granted, the embodiments disclosed therein nonetheless appear to be very similar to [the Accused Product]." (Id. ¶ 52.)

In January 2021, defendant informed plaintiff that it was redesigning the Accused Product. (Mot. at 5.) The following

---

[7] For example, to illustrate that the Accused Product includes "a first surface arranged on an inner side of the rigger interface" and "the inner side including two side portions spaced apart from one another in vertical direction," plaintiff labels two images of the Accused Product with the labels "first surface on inner side," "two side portions," and "vertical direction." (Claim Chart at 2.)

[8] The '190 Publication was filed on November 1, 2017. The resulting '963 Patent issued on November 9, 2021, approximately a year after plaintiff's cease and desist letter.

month, defendant provided plaintiff with a drawing of the new version of the product. (Id.) Plaintiff alleges that defendant altered the functionality of its products to avoid infringement of the '025 Patent but did not make any alterations to avoid infringement of the '963 Patent. (Compl. ¶¶ 55-56.) Plaintiff also alleges defendant sells the Accused Product on defendant's website as well as third-party platforms like Amazon. (Id. ¶¶ 49-50.)

II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal when the plaintiff's complaint fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). "A Rule 12(b)(6) motion tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). The inquiry before the court is whether, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the complaint has alleged "sufficient facts . . . to support a cognizable legal theory," id., and thereby stated "a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In deciding such a motion, all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them. Id.

"[P]atent eligibility can be determined at the Rule 12(b)(6) stage." Aatrix Software, Inc. v. Green Shades Software, Inc., 882 F.3d 1121, 1125 (Fed. Cir. 2018) (citations omitted). Pursuant to statute, "[a] patent shall be presumed valid." 35 U.S.C. § 282. Accordingly, a defendant's "burden in seeking to

dismiss plaintiff's claims based on patent ineligibility is high because of the [p]atent's presumptive validity." Boar's Head Corp. v. DirectApps, Inc., No. 2:14-cv-01927 KJM KJN, 2015 WL 4530596, at *3 (E.D. Cal. July 28, 2015) (citation omitted). "Additionally, in applying § 101 jurisprudence at the pleading stage, the [c]ourt construes patent claims in a manner most favorable to [p]laintiff." Vineyard Investigations v. E. & J. Gallo Winery, 510 F. Supp. 3d 926, 934 (E.D. Cal. 2021) (Drozd, J.) (citation omitted).

III. DISCUSSION

    A.   Claim Construction

        As a preliminary matter, the court must first address whether claim construction is required at this stage in the proceedings. Claim construction is not required to resolve a motion based on § 101 eligibility. See e.g., Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n, 776 F.3d 1343, 1349 (Fed. Cir. 2014) ("Although the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter, claim construction is not an inviolable prerequisite to a validity determination under § 101.") (citing Ultramercial, Inc. v. Hulu, LLC, 772 F.3d 709, 714-15 (Fed. Cir. 2014); Bancorp Servs., LLC v. Sun Life Assurance Co. of Canada (U.S.), 687 F.3d 1266, 1273-74 (Fed. Cir. 2012)).

        If claim construction disputes exist at the 12(b)(6) stage, as they do here, a court may either "proceed by adopting the non-moving party's constructions" or "resolve the disputes to whatever extent is needed to conduct the § 101 analysis, which

may well be less than a full, formal claim construction." Aatrix Software, 882 F.3d at 1125. Accordingly, the court concludes that a separate claim construction hearing is unnecessary to decide present the motion.

    B.    Patent Eligibility

Section 101 of the Patent Act defines patent-eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. "[Section] 101 specifically excludes from patent eligibility laws of nature, natural phenomena, and abstract ideas." Vineyard Investigations, 510 F. Supp. 3d at 934 (citing Ass'n for Molecular Pathology v. Myriad Genetics, Inc., 569 U.S. 576, 589 (2013)). However, the Supreme Court has recognized that "all inventions at some level embody, use, reflect, rest upon, or apply . . . abstract ideas." Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc., 566 U.S. 66, 71 (2012). Thus, inventions which apply an abstract concept "to a new and useful end" remain eligible for patent protection. Alice Corp. Pty. Ltd. v. CLS Bank Int'l, 573 U.S. 208, 217 (2014) (citations and quotations omitted).

In Alice, 573 U.S. 208 (2014), the Supreme Court established a two-part test to determine whether claims are patent eligible under § 101. First, a court must determine whether the claims at issue are "directed at an abstract idea" or other patent-ineligible concepts. Id. at 217. Second, if a claim is directed at a patent-ineligible concept, a court considers whether the claim "contains an inventive concept sufficient to transform the claimed abstract idea into a patent-

eligible application." Id. at 221 (citations and quotations omitted). "If the claims are not directed to an abstract idea, the inquiry ends." McRO, Inc. v. Bandai Namco Games Am. Inc., 837 F.3d 1299, 1312 (Fed. Cir. 2016).

Plaintiff argues that the '963 Patent's claims are directed to statutorily eligible subject matter -- "machines: rigging interfaces with various well-defined surfaces and other components" -- and thus falls within an enumerated category of § 101. (Opp'n at 6-7); see Ultramercial, 772 F.3d at 713-14 ("A § 101 analysis begins by identifying whether an invention fits within one of the four statutorily provided categories of patent-eligible subject matter.").

"The Supreme Court has defined 'machine' as 'a concrete thing, consisting of parts, or of certain devices and combination of devices.'" In re Nuijten, 500 F.3d 1346, 1355 (Fed. Cir. 2007) (quoting Burr v. Duryee, 68 U.S. 531, 570 (1863)) (finding a "signal" is not a "machine" under § 101 because it "does not possess concrete structure . . ."). "[M]achines, which are tangible . . . should not be considered to be abstract ideas." Ariosa Diagnostics, Inc. v. Sequenom, Inc., 809 F.3d 1282, 1285 (Fed. Cir. 2015) (Dyk, J., concurring); cf Digitech Image Techs., LLC v. Elecs. for Imaging, Inc., 758 F.3d 1344, 1349 (Fed. Cir. 2014) (finding patent with claims directed at a digital processing system "[wa]s not a tangible or physical thing and d[id] not fall within any of the categories of eligible subject matter").

Plaintiff relies on Junk Food Custom Arcades, LLC v. Hit Box, LLC, 2022 WL 17920364, No. 2:21-cv-262 RWS (N.D. Ga.

Oct. 18, 2022), for the proposition that claims directed to "surfaces" may constitute a machine under § 101.  (See Opp'n at 8-11.)  There, one patent "claim[ed] an allegedly novel hand operated game controller which utilizes an all-push-button surface with an allegedly novel button arrangement."  Junk Food, 2022 WL 17920364, at *1.  The court found that patent was not "directed at an abstract idea" under Alice's step one for two reasons.  First, the patent specified "tangible boundary lines, function buttons, and movement buttons located in specific locations and orders relative to each other that are intended" to improve the device.  Id. at *5.  Second, the patent "claim[ed] tangible forms, including tangible and novel arrangement[s] and placement of buttons."  Id.

In adopting plaintiff's claim constructions, as the court must at the 12(b)(6) stage, see Aatrix, 882 F.3d at 1125, the '963 Patent is "a concrete thing" comprised of multiple surfaces and extensions which "protect[] the fairlead of a winch system from damage . . . ."  ('963 Patent at 19.)  Specifically, Claim 1 explains that the invention claimed comprises "a first surface arranged on an inner side of the rigging interface . . . wherein the two side portions of the inner side are configured to nest against a front of a winch fairlead."  (Id.)  Like in Junk Food, Claim 1 specifies a tangible form and tangible boundary lines.  Junk Food, 2022 WL 17920364, at *5.

Defendant attempts to advance arguments that the '963 Patent is not patent-eligible because of plaintiff's word choice

in the claims, such as "interface," "extension," and "surfaces."[9] (Mot. at 12-13.) However, parsing the definitions of words in isolation is not the appropriate task for the court at this stage in the proceedings. At Alice step one, the court must "look[] at the 'focus' of the claims, their 'character as a whole.'" Elec. Power Grp., LLC v. Alstom S.A., 830 F.3d 1350, 1353 (Fed. Cir. 2016). Moreover, at the 12(b)(6) stage, "the [c]ourt construes patent claims in a manner most favorable to [p]laintiff." Vineyard Investigations, 510 F. Supp. 3d at 934. Thus, any factual disputes must be resolved by assuming the construction most favorable to plaintiff. See Boar's Head, 2015 WL 4530596, at *7 (citations omitted).

Accordingly, plaintiff has sufficiently plead that the '963 Patent is directed at patent-eligible subject matter under step one of Alice because it is tangible and possesses a concrete structure. The court therefore need not progress to step two of Alice.

B. Patent Infringement

Within the the Complaint's claim for patent infringement of the '963 Patent, plaintiff pleads that defendant is liable for inducement, contributory infringement, and willful infringement. (Compl. ¶¶ 62-72.)

1. Direct Infringement

To support a claim for inducement or contributory infringement, there must be an underlying act of direct

[9] For example, defendant posits that "a surface, like a side, is a concept or mathematical relationship between locations in space, rather than a physical device" and therefore is patent-ineligible subject matter. (Mot. at 5.)

infringement.[10] See In re Bill of Lading Transmission and Processing Sys. Patent Litig., 681 F.3d 1323, 1333 (Fed. Cir. 2012). "[T]o prove direct infringement, a patentee must either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit." ACCO Brands, Inc. v. ABA Locks Mfrs. Co., 501 F.3d 1307, 1313 (Fed. Cir. 2007). Where "the accused device can be used at any given time in a noninfringing manner, the accused device does not necessarily infringe the [] patent." Id. (finding no direct infringement where the patentee "failed to point to specific instances of direct infringement" and the device had noninfringing uses).

As the court detailed above when describing plaintiff's Claim Chart, plaintiff alleges that the Accused Product conforms with every specification of Claim 1. (See Ex. D.) Thus, the Accused Product "necessarily infringes the patent in suit." ACCO Brands, 501 F.3d at 1313. Accordingly, plaintiff has sufficiently plead direct infringement of the '963 Patent.

2. Inducement

Under section § 271(b) of the Patent Act, "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). A patent holder "must prove that once the defendant[] knew of the patent, they actively and knowingly aid[ed] and abbett[ed] another's direct infringement." DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1305 (Fed. Cir. 2006)

---

[10] Section 271(a) provides: "[W]however without authority makes, uses, offers to sell, or sells any patented invention . . . during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a).


(citation and quotations omitted); see also id. at 1306 ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.") (citation and quotation omitted).

Plaintiff argues defendant induced infringement of at least Claim 1 "by selling the Accused Products with instructions as to how to use the Accused Products in a system such as that recited in the '963 Patent." (Compl. ¶ 63.) Moreover, plaintiff contends that defendant knew of the specifications of the '190 Publication (which later issued as the '963 Patent) as early as October 20, 2020, when it sent defendant the cease and desist letter. (Id.)

At this stage, plaintiff's allegations that defendant knew of the patent, was put on notice by plaintiff of possible infringement, and actively sold the Accused Product to be used in an infringing manner are sufficient. See Google LLC v. Princeps Interface Techs. LLC, No. 19-cv-06566 EMC, 2020 WL 1478352, at *4 (N.D. Cal. Mar. 26, 2020) ("[A] patentee need only cite examples of where the accused infringer advertised benefits that can be achieved only through use of the asserted patent to plausibly plead specific intent under 12(b)(6).") (citation and quotation omitted). Accordingly, plaintiff has sufficiently plead induced infringement of the '963 Patent.

2. Contributory Infringement

"Contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement." Commil USA, 575 U.S. at 639; see 35 U.S.C. § 271(c). To state a claim for contributory infringement, a plaintiff must "plead facts that

allow an inference that the components sold or offered for sale have no substantial non-infringing uses." In re Bill, 681 F.3d at 1337-38 ("[T]he inquiry focuses on whether the accused products can be used for purposes other than infringement.") (emphasis omitted). "In the context of a claim of contributory infringement under § 271(c), a substantial non-infringing use is any use that is 'not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.'" Id. at 1337 (quoting Vita-Mix Corp. v. Basic Holdings, Inc., 581 F.3d 1317, 1327-29 (Fed. Cir. 2009)). "Where the product is equally capable of, and interchangeably capable of both infringing and substantial non-infringing uses, a claim for contributory infringement does not lie." Id. at 1338.

Defendant argues that plaintiff does not provide facts sufficient to show the Accused Product has no substantial non-infringing uses. (See Mot. at 21.) Defendant also contends that that plaintiff's Claim Chart in fact shows a substantial non-infringing use by demonstrating the Accused Product being used with a "rope" as opposed to a "cable."[11] (Id. at 18-29, 21.) The court is not persuaded. First, defendant's arguments are merely conclusory. Second, even if relevant to subsequent claim construction of the '963 Patent, the court will not distinguish between the use of word "cable" and "rope" at the 12(b)(6) stage.

As already discussed, the Claim Chart illustrates that

---

[11] Defendant explains: "In light of the distinction made by [plaintiff] between cables and ropes in the '963 [P]atent, [plaintiff's] depiction of a rope in its claim chart does not plausibly satisfy the 'cable' limitation of [C]laim 1." (Mot. at 19.)

the Accused Product satisfies every specification of Claim 1. Plaintiff alleges that anyone who uses the Accused Product "directly infringes Claim 1 of the '963 Patent." (Compl. ¶ 64.) The court therefore finds plaintiff has plausibly alleged that the Accused Product has no substantial non-infringing uses. Accordingly, plaintiff has sufficiently plead contributory infringement of the '963 Patent.

3. Willful Infringement

Section 284 of the Patent Act states that in the case of infringement, "the court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. "While 'there is no precise rule or formula' for meeting out enhanced damages, it is 'generally reserved for egregious cases of culpable behavior.'" Sonos, Inc. v. Google LLC, 591 F. Supp. 3d 638, 642 (N.D. Cal. 2022) (quoting Halo Elecs., Inc. v. Pulse Elecs., Inc., 579 U.S. 93, 103-04 (2016)). The Supreme Court describes such behavior as "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or--indeed--characteristic of a pirate." Halo, 579 U.S. at 104; see also SRI Int'l, Inc. v. Cisco Sys., Inc., 930 F.3d 1295, 1308 (Fed. Cir. 2019) ("[It] is the circumstances that transform simple 'intentional or knowing' infringement into egregious, sanctionable behavior, and that makes all the difference.") (citation omitted).

To establish willful infringement the patentee must first prove knowledge of the patent and "show the accused infringer had a specific intent to infringe at the time of the challenged conduct." Sonos, 591 F. Supp. 3d at 644 (citing WBIP,

LLC v. Kohler Co., 829 F.3d 1317, 1341 (Fed. Cir. 2016); Bayer Healthcare LLC v. Baxalta Inc., 989 F.3d 964, 987-88 (Fed. Cir. 2012)) (additional citations and quotations omitted). "[O]nce willfulness is adequately pled, the complaint need not go further and specify the further aggravating circumstances warranting enhanced damages."[12] Id. at 644 (emphasis omitted).

Here, plaintiff alleges that defendant was aware of the pre-publication grant of the '963 Patent by at least May 2, 2019. (See Compl. ¶ 69.) Plaintiff further alleges that defendant was put on notice of possible infringement of the '963 Patent (then the '190 Publication) when plaintiff sent the cease and desist letter on October 22, 2020. (Id. ¶¶ 51-54.) Moreover, plaintiff alleges that defendant altered the Accused Product to avoid infringement of the '025 Patent but did not make any alterations to avoid infringement of the '963 Patent. (Id. ¶¶ 55-56.) Finally, plaintiff alleges that defendant continues to market and sell the Accused Product. (Id. ¶¶ 47-50.)

In drawing all reasonable inferences in plaintiff's favor as the court must at this stage, see Twombly, 550 U.S. at 570, on this record plaintiff has sufficiently alleged that defendant had knowledge of the '963 Patent and specific intent to infringe by selling the Accused Product. See Sonos, 591 F. Supp. 3d at 644-45 ("The full extent of egregious behavior is . . . unknown at the pleading stage. It would be unreasonable to

[12] In Sonos, the district court highlighted the difference between a party pleading willful infringement and the court awarding damages after a party proved infringement. Sonos, 591 F. Supp. 3d at 645. As that court explained: "It would be a rare case where the infringer disclosed the full extent of its egregious behavior in advance of litigation, such that the conduct could be fully described in the complaint . . . ." Id.

expect patent plaintiffs to be in a position to plead the full extent of egregious misconduct . . .")  Accordingly, plaintiff has sufficiently plead willful infringement of the '963 Patent.

The court thus finds that the '963 Patent is directed toward patent-eligible subject matter under § 101.  Further, the court finds that plaintiff has sufficiently alleged induced infringement, contributory infringement, and willful infringement of the '963 Patent.

IT IS THEREFORE ORDERED that defendant's motion to dismiss (Docket No. 12) be, and the same hereby is, DENIED.

Dated: March 8, 2023

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE